UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK JONES                                                            CIVIL ACTION

VERSUS                                                                NO. 23-5112

SUSAN HUTSON                                                          SECTION "R" (4)

## ORDER AND REASONS

Before the Court is defendant Susan Hutson's motion for summary judgment.[1] Plaintiff opposes the motion.[2] For the reasons set forth below, the Court grants the motion.

I. BACKGROUND

This action arises from the allegedly unlawful termination of plaintiff's employment as a unit manager of the Orleans Justice Center, a correctional facility under the control of the Orleans Parish Sheriff's Office.[3] Plaintiff contended that he was fired because he is Black and because he is a man, and that Hutson had no cause to fire him.[4] Plaintiff brought causes of action against Hutson in her individual and official capacities for violation of his right to due process under the Fourteenth Amendment, actionable under 42

---

[1]   R. Doc. 28.
[2]   R. Doc. 40.
[3]   R. Doc. 1.
[4]   *Id.* ¶¶ 21, 24.

U.S.C. § 1983; race discrimination in violation of 42 U.S.C. § 1981, actionable under Section 1983; and gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, actionable under Section 1983.[5] In May 2024, the Court granted defendant's motion to dismiss plaintiff's due process and gender discrimination claims for failure to state a claim upon which relief can be granted.[6] Defendant now moves for summary judgment on plaintiff's remaining claims of Section 1981 race discrimination.[7]

The Court considers the motion below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or

---

[5]   *Id.* ¶¶ 31–60.
[6]   R. Doc. 14.
[7]   R. Doc. 28.

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and then citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The Court must draw all reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)).  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an

essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*

## III. DISCUSSION

A plaintiff may prove a claim of intentional discrimination by direct or circumstantial evidence. *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023)). Because plaintiff puts forth circumstantial, not direct, evidence of race discrimination,[8] the Court analyzes this claim under the burden-shifting framework laid out in M*cDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ayorinde*, 121 F.4th at 507. Under this framework, a plaintiff has the burden of establishing a *prima facie* case of discrimination. If he does, the burden shifts to the defendant to articulate a

---

8     Plaintiff does not argue that he has evidence of direct discrimination. Instead, he argues that he has established *prima facie* race discrimination under the *McDonnell Douglas* framework. R. Doc. 40 at 16.

legitimate, nondiscriminatory reason for her action. If the defendant can provide a reason, the burden shifts back to the plaintiff to prove that the reason is pretextual. *Id.* (quoting *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021)).

To make a *prima facie* case of discrimination, a plaintiff must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Id.* (quoting *McCoy*, 492, F.3d at 556).

Plaintiff is a Black man who argues that he was fired because he was Black.[9] Defendant contends that plaintiff cannot establish *prima facie* discrimination because he has not demonstrated the fourth element of a *prima facie* case. Specifically, she argues that plaintiff was not replaced by someone outside of his protected group, and he failed to show that he was treated less favorably than other similarly situated employees outside of his protected group.[10]

---

9   R. Doc. 1 ¶ 43–51.
10  R. Doc. 28-2 at 13–16.

A merely temporary replacement is insufficient to establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework. *See Mercer v. Capitol Mgmt. & Realty, Inc.*, 242 F. App'x 162, 163 (5th Cir. 2007); *see also Pizzolato v. French Mkt. Corp.*, 2015 WL 5254698, at *4 (E.D. La. Sept. 9, 2015). Additionally, the Fifth Circuit has held that "[a]n employee has not been replaced when his former duties are distributed among other co-workers." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294 (5th Cir. 2014)); *see Rexses v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010) ("[A] terminated employee has not been 'replaced' when his position is eliminated and his former duties are distributed among other co-workers." (citing *Dulin v. Dover Elevator Co.*, 139 F.3d 898, *3 (5th Cir. 1998)); *see also Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (emphasis added), *cited with approval in Dulin*, 139 F.3d at *3 ("A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties," but he is not replaced "when another employee is assigned to perform the plaintiff's duties *in addition to other duties*, or when the work is redistributed among other existing employees already performing related work."). Therefore, the *prima facie*

claim hinges on whether Anthony Fricano, who is a white man, permanently replaced plaintiff within the meaning of the law.[11]

Defendant argues that Fricano did not permanently replace plaintiff, because he was selected to fill plaintiff's role only temporarily, before plaintiff's unit manager duties were redistributed after a restructuring.[12] The Orleans Justice Center ("OJC") is divided into four housing units.[13] Before its restructuring, OJC employed an administrative structure over those units called the unit manager system.[14] The unit manager system had a captain in charge of each unit, known as the unit manager.[15] Plaintiff was unit manager over unit two in the OJC.[16] Before plaintiff's termination, defendant decided to change the OJC's administrative structure, from a unit manager system to a watch commander system.[17] The duties of the unit managers in the OJC had been taken up by the watch commanders by early 2023.[18] The watch commander system utilizes a commander who oversees a squad, which is

---

[11] Plaintiff does not argue that he was treated less favorably than similarly situated non-Black employees. His discrimination argument rests on the assertion that he was replaced by Fricano. *See* R. Doc. 40 at 8 & 15.
[12] R. Doc. 28-2 at 13–14.
[13] R. Doc. 40-1 at 19.
[14] *Id.* at 20.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 32.
[18] *Id.* at 32–33.

assigned to a specific day and time shift, and therefore oversees all four units in the OJC at once.[19] For instance, instead of having the same unit manager always supervising unit two, one watch commander supervises all of the units, units one through four, during the day, and another watch commander supervises the units at night.

In September 2022, defendant terminated the employment of two captains who were unit managers, one of whom was plaintiff.[20] Defendant elevated Fricano, who was a lieutenant, to plaintiff's unit manager role until the transition to the watch commander system was completed. Fricano held this role from September 2022 to around February 2023. At that point, the role ceased to exist, and the duties of the unit managers were assumed by the watch commanders.[21]

A former Orleans Parish Sheriff's Office ("OPSO") major, Johnathan Griffin, clarified that lieutenants are promoted to replace captains, and that it would be unusual to promote a lower rank than lieutenant to be a captain.[22] Griffin testified that at the time plaintiff was fired, there were no Black men

---

19  *Id.* at 32
20  *Id.* at 20, 31.
21  *Id.* at 32–33.
22  R. Doc. 40-10 at 13.

who were lieutenants whom Hutson could have selected for promotion, and that Fricano was a lieutenant who was eligible to be promoted.[23]

While plaintiff argues that Fricano was plaintiff's actual replacement,[24] plaintiff fails to point to evidence creating a genuine issue of fact in support of this contention. Based on all of the evidence, the Court finds that Fricano was a temporary replacement and that he held the position on an interim basis. The testimony that plaintiff points to in order to demonstrate that Fricano was a permanent replacement does the opposite. He points to the testimony of Assistant Sheriff Pearlina Thomas, Griffin, and Fricano himself.[25] Thomas testified that Fricano replaced plaintiff until OJC transitioned from unit managers to watch commanders.[26] Similarly, Griffin testified that Fricano replaced plaintiff until OJC went to the watch commander system, at which point the unit manager position ceased to exist, because "that responsibility of unit went out the window."[27] Fricano stated that shortly after plaintiff was terminated, he was promoted to acting captain and was assigned to the second unit until the end of Mardi Gras.[28] In this

---

23   *Id.*
24   R. Doc. 40-1 at 33.
25   R. Doc. 40 at 7.
26   R. Doc. 40-2 at 15.
27   R. Doc. 40-10 at 11.
28   R. Doc. 40-8 at 3–4.

role, he was the acting captain and worked the day shift.[29] Then, when the OJC eliminated the unit manager role, he was demoted to lieutenant, returned to working on the night shift, and eventually acquired the title assistant watch commander.[30] This testimony aligns with defendant's and warden Astrid Birgden's declarations. Defendant stated that, because it would take time to transition from one system to another, two employees had to be appointed as unit managers on an interim basis, and Fricano was one of the employees elevated until February 2023.[31] Birgden also stated that Fricano was selected to fill the role of unit manager temporarily while OJC transitioned to the watch commander system.[32]

This evidence demonstrates that Fricano was temporarily elevated to the position of unit manager while OJC transitioned to the new administrative system. An interim replacement is insufficient to establish *prima facie* discrimination. *See Mercer v. Capitol Mgmt. & Realty, Inc.*, 242 F. App'x 162, 163 (5th Cir. 2007). Instead, the Court will look to the permanent replacement of plaintiff. And here, plaintiff's position was eliminated. Although plaintiff argues that the differences between the watch

---

[29]   *Id.* at 3.
[30]   *Id.* at 4.
[31]   R. Doc. 28-7 at 14–15.
[32]   R. Doc. 28-8 at 2.

commander and unit manager system are immaterial,[33] he admits that his former duties were redistributed to the watch commanders.[34] Since a person is not replaced when his duties are distributed to other employees who are responsible for other duties, the Court finds that plaintiff was not replaced by Fricano alone. His role was ultimately subsumed by a new system, the watch commander system. And plaintiff admits that four out of the five individuals appointed to be watch commanders, who were responsible for assuming his responsibilities (and other materially different responsibilities), were members of his protected group.[35] *See Rexses v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010) (affirming that an employee was not replaced when his position was eliminated and his responsibilities were distributed among other coworkers when "there were a number of material differences between" his former duties and the duties of the employees to whom his duties were distributed).

In *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333 (5th Cir. 2021), a race discrimination case, the Fifth Circuit held that plaintiff failed to establish a *prima facie* case of discrimination when his job responsibilities were

---

[33]   R. Doc. 40 at 8.
[34]   Plaintiff admits that the duties of the unit managers were taken up by the watch commanders. R. Doc. 40-1 at 32.
[35]   R. Doc. 40-1 at 33.

absorbed by more than one employee, and the record did not contain the race of at least one of those employees. *Id.* at 339–340, 339 n.5. The *Ernst* court contrasted this fact pattern to *Young v. Harris Health Care, Inc.*, 226 F.3d 643 (5th Cir. 2000), an age discrimination case in which a plaintiff established that *all* of the individuals to whom her responsibilities were allocated were substantially younger. *Id.* at *3; *Ernst*, 1 F.4th at 339 n.5. The *Young* plaintiff did prove a *prima facie* case of discrimination. This case is more similar to *Ernst* than *Young*. Here, the evidence is unequivocal that four out of the five individuals who assumed plaintiff's responsibilities were members of his protected group. Therefore, plaintiff has not raised an issue of material fact that he was replaced by someone outside his protected class.

Finally, defendant Hutson is herself Black, making it unlikely that she discriminated against plaintiff because he is Black. See *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460 (5th Cir. 2019) ("[D]iscrimination is less likely when the supervisor is in the same protected class as the plaintiff." (citing *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 783 (5th Cir. 2015)); *Battle v. Mnuchin*, 480 F. Supp.3d 198, 206 (D.D.C. 2020) ("While it is certainly possible for a person to engage in racial discrimination against someone of the same race, common sense suggests that this is unlikely."); *Drummond v. IPC Int'l, Inc.*, 400 F. Supp.2d

521, 532 (E.D.N.Y. 2005) ("[A] well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class.").

For all of the foregoing reasons, the Court grants defendant's summary judgment motion and dismisses plaintiff's Section 1981 race discrimination claims against Hutson in her personal and official capacities.[36]

## IV.  CONCLUSION

The Court GRANTS defendant's motion for summary judgment and DISMISSES plaintiff's race discrimination claims against Susan Hutson WITH PREJUDICE.

---

[36] Plaintiff pled his race discrimination claims against Sheriff Hutson in both her individual and official capacity. A suit against a government official in her official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). To state a claim for municipal liability, a plaintiff must allege (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation caused by that policy or custom. *Robinson v. Hunt Cty., Tex.*, 921 F.3d 440, 447 (5th Cir. 2019) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Because plaintiff has failed to state his claims for constitutional violations, plaintiff's official capacity claims against Sheriff Hutson must be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (noting that, to state a claim for municipal liability, a plaintiff must establish the elements of personal liability in addition to the existence of a policy or custom that caused the constitutional violation).

New Orleans, Louisiana, this __8th__ day of July, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE